*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN MICHAEL BROOKS,

Defendant-Appellant.

UNPUBLISHED
August 10, 2026
3:15 PM

No. 374635
Van Buren Circuit Court
LC No. 2022-024127-FH

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Defendant, Steven Michael Brooks, appeals by right convictions of third-degree fleeing and eluding, MCL 257.602a(3)(a), and domestic violence, MCL 750.81(2), following a bench trial. Defendant contends that the evidence was insufficient to support either conviction. For the reasons below, we disagree and therefore affirm.

## I. BACKGROUND AND FACTS

Trial testimony established that on June 21, 2022, Paw Paw Police Officers Matt Johnson and Richard Gibbs responded in uniform and a fully-marked patrol car to a dispute on East Berrien Street. Sally Babcock-Gamber had called the police because defendant and his sister, Rebecca Brooks,[1] whose uncle lived next door, were on her property and filming her family in connection with allegations about stolen property. Officer Johnson spoke to both groups of neighbors separately. Defendant responded by becoming verbally aggressive and yelling profanities. He also tried to stop Rebecca from speaking to the police.

After speaking with the Brookses and giving them a warning for disturbing the peace, Officer Johnson returned to the Babcocks' house to warn them about disturbing the peace as well. During this time, Officer Gibbs positioned himself outside so that he could see the Babcocks and the Brookses. Rebecca testified that both she and defendant were very upset. Officer Gibbs

---

[1] Because Rebecca Brooks shares the same last name as defendant, we refer to her by her first name.

recalled that defendant was "highly agitated" and that he saw defendant shove Rebecca with two hands to her shoulders. Defendant, at trial, denied shoving Rebecca; he testified that he and Rebecca had been bickering when he tried to calm his sister down by giving her a hug and that she was the one who pushed him away. For her part, Rebecca echoed defendant's account by testifying that defendant tried to hug her and she responded, "don't f****** touch me, just leave."

The cruiser's dashcam video, which was admitted at trial, captured audio and some video from the incident. After Officer Gibbs saw defendant's altercation with Rebecca off-camera, Officer Gibbs told Officer Johnson "let's go," and both officers ran toward the Brooks residence as defendant was getting into his vehicle. Rebecca stepped in between Officer Johnson and defendant and told the officers that defendant did not hit her. Rebecca grabbed onto Officer Johnson as he yelled at defendant to stop. Defendant accelerated backwards out of the driveway and reversed down East Berrien Street, away from the Babcock residence and from where the officers' patrol car was parked. According to Officer Johnson and as reflected in the dashcam video, defendant then reversed into another driveway at a high rate of speed, put the car in drive, and drove forward, turning onto a side street.

At trial, defendant acknowledged that he was driving the white Chevrolet Trailblazer that appears in the video but testified that he was not aware of the officer's verbal command to stop because he did not hear any commands. Rebecca testified that the window of the defendant's vehicle was up because the vehicle had electrical issues and the window often did not work. However, Officer Johnson testified that the window was down. Defendant testified that he drove backwards down the street to avoid passing the neighbor's house, and that he did not see the patrol car parked there.

Officer Johnson testified that driving down the street backwards is a violation of traffic laws. Officer Johnson also testified that he did not know how fast defendant was driving because he never timed him and could not recall whether he ran any stop lights. While driving, defendant did not pull over his vehicle in response to the patrol vehicle's lights and sirens, which he denied seeing or hearing. The officers ultimately terminated their pursuit because the Paw Paw Police Department does not allow lengthy pursuits of a vehicle for misdemeanor offenses.

Following trial, the trial court made findings of fact in accordance with MCR 6.403 and found defendant guilty on both charged counts. Defendant now appeals.

## II. STANDARD OF REVIEW

"A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court reviews a challenge to the sufficiency of evidence supporting a conviction de novo. *People v Parkinson*, 348 Mich App 565, 573; 19 NW3d 174 (2023). We must review the evidence "in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). "Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). When evaluating the sufficiency of the evidence, "[t]he standard of review is deferential, and this Court

is required to draw all reasonable inferences and make credibility choices" in support of the verdict. *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008) (quotation marks and citation omitted). "[R]eversing a guilty verdict on the basis that there was insufficient evidence is a high bar to overcome." *People v Prude*, 513 Mich 377, 384-385; 15 NW3d 249 (2024).

"In a bench trial, factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *Parkinson*, 348 Mich App at 574 (cleaned up). We review the interpretation and application of statutes de novo. *Id.*

## III. ANALYSIS

### A. FLEEING AND ELUDING

Defendant first contends that he was denied his due-process right to a fair trial because there was insufficient evidence to convict him of third-degree fleeing and eluding. We disagree.

MCL 257.602a(1) provides as follows:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

And MCL 257.602a(3) provides, in pertinent part:

> [A]n individual who violates [MCL 257.602a(1)] is guilty of third-degree fleeing and eluding, a felony punishable by imprisonment for not more than 5 years or a fine of not more than $1,000.00, or both, if . . . the following circumstances apply:
>
> * * *
>
> (b) A portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law.

Thus, to obtain a conviction of third-degree fleeing and eluding under MCL 257.602a(3), the prosecution must prove the following six elements:

> (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered

-3-

to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less . . . . [*People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999).[2]]

On appeal, defendant argues that the evidence was insufficient as to three of the elements: whether defendant was driving a motor vehicle, whether defendant was aware that he had been ordered to stop, and whether defendant refused to obey that order or orders by trying to flee or avoid being caught. See MCL 257.602a(3). We will discuss each element in turn.

First, as to whether defendant was driving a motor vehicle, defendant argues that he was not driving at the time the officer's order to stop was given but was instead standing still in the doorway of the vehicle. As an initial matter, because the statute requires that the command be given to a "driver" of a motor vehicle, MCL 257.602a(1), we agree that defendant could not be found guilty of violating MCL 257.602a(1) for disobeying an order given before he entered the vehicle. But in this case the dashcam video shows that when the verbal command to stop was given, defendant's vehicle was already in motion, accelerating backwards out of the driveway. Thus, there is evidence that defendant was driving the motor vehicle at the time Officer Johnson gave the verbal command to stop the vehicle.

In addition, Officer Johnson testified that the officers ordered defendant to stop by activating the emergency lights and siren on the patrol vehicle as defendant drove away. Under MCL 257.602a(1), an "emergency light" or a "siren" can constitute a "visual or audible signal . . . directing the driver to bring [their] motor vehicle to a stop." And the evidence clearly demonstrates that defendant was driving when the officers activated the patrol vehicle's emergency lights and siren and gave chase. Viewing the evidence in the light most favorable to the prosecution, see *Powell*, 278 Mich App at 320, a reasonable factfinder could find beyond a reasonable doubt that defendant was given an order to stop after entering the vehicle and thus, that he was driving a motor vehicle when the command was given.

Next, as to whether defendant was aware that he had been ordered to stop, defendant asserts that he was out of view when the lights and siren were activated on the police vehicle and that his window was up. Following Officer Johnson's verbal command to stop the vehicle, officers observed defendant driving erratically, going backwards down the street and away from the direction of the officers. About thirty seconds after defendant turned off Berrien Street, the police officers activated the patrol vehicle's siren. As the trial court reasoned, regardless of whether the vehicle's window was up or down, a reasonable person would have been able to hear the siren from that distance. Accordingly, there was sufficient evidence from which a rational factfinder could determine that defendant was aware of the officers' order in the form of "a visual or audible signal" from an "emergency light, or siren" to stop. MCL 257.602a(1).

_____

[2] *Grayer* concerned a conviction for third-degree fleeing and eluding under MCL 750.479a, the text of which is nearly identical to that of MCL 257.602a.

Defendant also argues that he was not aware of the initial verbal order because his window was up when the order was given and because if he had heard it, he reasonably could have believed that the order to stop was directed at Rebecca and not at defendant. At trial, Officer Johnson testified that he told defendant to stop from a distance of approximately fifteen feet. Officer Johnson also testified that the window was down. The trial court was free to credit Officer Johnson's testimony. See *Powell*, 278 Mich App at 320. Moreover, the prosecution need not prove defendant's violation of a verbal order as the sole basis for a conviction. As discussed, an order given in the form of emergency lights and sirens is also sufficient to satisfy the requirements for a conviction under MCL 257.602a(1). Taking all the evidence into consideration, the evidence was sufficient to prove beyond a reasonable doubt that defendant was aware that the officers ordered defendant to stop his vehicle.

Finally, as to whether defendant refused to obey the officers' orders by trying to flee or avoid being caught, defendant asserts that there was no evidence that he exceeded the speed limit, drove erratically, or engaged in evasive tactics. MCL 257.602a(1) states that when a police officer gives a lawful command to a driver to stop, the driver "shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer." In *Grayer*, 235 Mich App at 744, this Court considered whether there was sufficient evidence to establish that the defendant committed third-degree fleeing and eluding. The Court looked to the dictionary definitions of "flee" and "elude," determining that "[b]oth terms connote an intent to take affirmative action, not simply fail to submit." *Id.* at 741. We thus explained that the prosecution must "demonstrate that the defendant refused to obey by trying to flee or avoid capture, which element necessitates a finding of some intent on the part of the defendant to flee or avoid capture." *Id.* at 741-742.

In this case, there is sufficient evidence that defendant intentionally took affirmative action to flee or elude and did not simply fail to submit to the officer's order to stop. A trier of fact "may draw the inference regarding the intent with which an act was done as they draw all other inferences from any fact in evidence that to their mind fairly proves its existence." *People v Medlyn*, 215 Mich App 338, 344; 544 NW2d 759 (1996). "[M]inimal circumstantial evidence" is sufficient to prove that defendant intended to commit an act. *Kanaan*, 278 Mich App at 622. The evidence shows that defendant accelerated backwards out of the driveway and down the street after Officer Johnson ordered him to stop. Defendant then turned around and continued driving away, despite the lights and sirens on the patrol vehicle being activated by the officers. At this point, the dashcam video shows that defendant's vehicle is clearly in view with nothing between it and the patrol vehicle. Additionally, as noted by the trial court, in the dashcam video, it appears that defendant failed to come to a complete stop at a stop sign while the patrol vehicle was following behind him. Viewing all of this evidence in the light most favorable to the prosecution, there is sufficient evidence to prove beyond a reasonable doubt that defendant intentionally took affirmative action to flee or elude the police officers.

On this record, considering all the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the verdict, the evidence was sufficient for a reasonable trier of fact to determine, beyond a reasonable doubt, that defendant was guilty of third-degree fleeing and eluding.

## B. DOMESTIC VIOLENCE

Defendant also contends that the evidence used to establish his conviction of domestic violence, MCL 750.81(2), was insufficient. Again, we disagree.

Under MCL 750.81(2), "an individual who assaults or assaults and batters . . . a resident or former resident of the individual's household[] is guilty of a misdemeanor . . . ." Thus, to convict defendant of domestic violence under MCL 750.81(2), the prosecution was required to prove that (1) defendant committed an assault or an assault and battery against Rebecca, and (2) Rebecca was a resident or former resident of defendant's household. See *id.*

"An assault is an attempt to commit a battery or an act that would cause a reasonable person to fear or apprehend an immediate battery." M Crim JI 17.2a; see also *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). A battery "is the forceful, violent, or offensive touching of a person or something closely connected with [them]." M Crim JI 17.2a. In this definition, the words "forceful" and "violent" mean "any use of physical force against another person so as to embarrass [them]." M Crim JI 17.14. The touching required must have been intentional, not accidental, and "it must have been against the [victim's] will." M Crim JI 17.15. Additionally, "[t]he defendant must have intended either to commit a battery or to make [the victim] reasonably fear an immediate battery." M Crim JI 17.2a. As an element of assault and battery, a defendant's intent may be established by circumstantial evidence. *Terry*, 217 Mich App at 662-63.

On appeal, defendant does not dispute that Rebecca, his sister, is a resident or former resident of his household. See MCL 750.81(2). But he argues that the evidence was insufficient to prove beyond a reasonable doubt that he assaulted her. Specifically, defendant argues that Officer Gibbs's testimony that he saw defendant shove Rebecca lacks corroboration. In fact, though, Babcock-Gamber testified that she witnessed Rebecca falling back as if defendant pushed her. Defendant also emphasizes that in contrast to Officer Gibbs's testimony, defendant testified that he tried to hug Rebecca, and she was the one who pushed him away, making it possible that Officer Gibbs misinterpreted the interaction. Similarly, Rebecca testified at trial that she rejected defendant's attempt to hug her, telling him, "don't f****** touch me, just leave."

Defendant thus highlights competing and somewhat conflicting testimony from different witnesses who each claimed to have personal knowledge of what occurred. But the trial court was free to credit Officer Gibbs's testimony over that of defendant and Rebecca. See *Powell*, 278 Mich App at 320. And viewing the evidence in the light most favorable to the prosecution, see *id.*, Officer Gibbs's testimony established that defendant committed a battery, or "offensive touching," M Crim JI 17.2a, against Rebecca.

Even under defendant's view of the facts, a reasonable trier of fact could determine that an assault occurred. Defendant and Rebecca both testified that defendant merely tried to hug her and that Rebecca was the one who pushed defendant away. But under MCL 750.81(2) the factfinder need not find that the defendant actually battered the victim, as an assault can be an act that would cause a reasonable person to fear or apprehend an immediate battery. See MCL 750.81(2); *Terry*, 217 Mich App at 662. Here, based on Rebecca's response to defendant's alleged attempt to hug her, a rational factfinder could determine that Rebecca apprehended an immediate battery, a touching that a reasonable person would have found offensive under the circumstances. See *id.*

Therefore, given the direct and circumstantial evidence in the record and reasonable inferences drawn therefrom, a reasonable factfinder could have found either that defendant committed a battery against Rebecca or that Rebecca apprehended an immediate offensive touching by defendant.  See *Nowack*, 462 Mich at 400.  Thus, the evidence presented was sufficient to prove beyond a reasonable doubt that defendant committed an assault or assault and battery in violation of MCL 750.81(2).

Affirmed.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin